IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAXIMILIAN EDDIE VARGAS, | ) | No. CV-F-08-1707 OWW/GSA |
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER GRANTING DEFENDANTS' |
| Plaintiff, | ) | MOTION TO DISMISS WITH LEAVE |
| | ) | TO AMEND (Doc. 6) |
| vs. | ) | |
| | ) | |
| | ) | |
| MERCED COUNTY DISTRICT | ) | |
| ATTORNEY'S OFFICE, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

On November 10, 2008, Plaintiff Maximilian Eddie Vargas filed a "Complaint for False Arrest, Civil Rights Violations, Government Employee Negligence, Negligence." Defendants are the Merced County District Attorney's Office, Deputy District Attorney David Maranda [sic], and Does 1-50.[1] The Complaint

---

[1]Defendant David Moranda asserts that his name is David Moranda.

1

alleges:

        6.  Twenty years ago Daniel Robert Thompson, who was at that time Vargas' friend, was accused of a homicide.  Vargas was interrogated by Merced law enforcement in connection with the investigation.

        7.  More recently the case against Thompson was reopened by the Merced District [sic] Attorney's Office and Merced County District Attorney's investigator Anna Hazell called Vargas two or three times on the telephone. Each time Anna Hazell called, Vargas answered and spoke to her, or returned her call.

        8.  After Anna Hazell called Vargas, Merced County Deputy District Attorney David Maranda also called Vargas at least twice.  Again, each time Maranda called, Vargas either answered and spoke to him or returned his call and spoke to him.

        9.  All conversations between Vargas and County of Merced District Attorney personnel pertained to Vargas meeting with Maranda to discuss what his testimony would be if the District Attorney called him to testify at Thompson's trial.  No person from the District Attorney's office or from Merced County Sheriff's office told Vargas there was a trial pending, or going on, or told Vargas that his testimony at trial was required.

        10.  On Friday, January 25, 2008 at approximately 5:41 p.m., Vargas was arrested pursuant to a bench warrant by County of Merced deputy [sic] Sheriff Hale 5156.  The bench warrant was issued by Judge John Kirihara.

        11.  At the time Vargas was arrested a call was made to Judge Kirihara, who verbally increased the bail set for Vargas to $75,000.

        12.  Vargas was booked into Merced County Jail.  While Vargas was in jail, he was served with a subpoena to appear Monday morning, January 28, 2008 to testify at Thompson's trial.

13.  Vargas bailed out of the Merced County Jail late Friday night or early Saturday morning, January 25 or 26, 2008.

14.  Vargas appeared Monday morning, January 28, 2008 and testified at Thompson's trial.

15.  Vargas at no time avoided or attempted to avoid service of a subpoena to testify at Thompson's trial.

16.  Vargas is informed and believes that the information presented to Judge Kirihara by Maranda, which caused Judge Kirihara to authorize the arrest warrant, was false; and that the false information Maranda presented to the court resulted in Vargas being falsely arrested.

17.  Vargas was harmed financially in that he lost the $7,500 he posted for bail after being arrested on Friday, January 25, 2008. Vargas also suffered general, [sic] pain and suffering, emotional distress, and special damages as a result of the arrest.

The First Cause of Action is for false arrest and imprisonment against the Merced County District Attorney and Deputy District Attorney Maranda and alleges:

25.  Defendant [sic] did not reasonably believe the warrant was valid and instead knew that the warrant was based on concealed, exculpatory evidence and false evidence presented to Superior Court judge [sic] John Kirihara to obtain the warrant.  Said abuse of process was a violation of Government Code §§ 818.8 and 822.51.

The Second Cause of Action is for violation of civil rights under 42 U.S.C. § 1983 against the Merced County District Attorney and Deputy District Attorney Maranda in his individual capacity and alleges:

28.  Defendants, under color of law, intentionally, recklessly, with malice, fraud

3

and the [sic] oppression violated Plaintiff's civil right to be free from unreasonable search and seizure in violation of 42 USC § 1983 and the fourth amendment of the United States Constitution.

29. David Maranda is not entitled to absolute investigative or prosecutorial immunity for violating plaintiff's civil rights because Maranda was a final, authorized policymaking authority and implemented and created and approved the decision and conduct in obtaining and executing the fraudulent warrant.

30. Maranda is also not entitled to absolute investigative or prosecutorial immunity in his individual capacity for violating plaintiff's civil rights because the fraudulent warrant he obtained was not based on probable cause.

The Third Cause of Action is against the Merced County District Attorney and Deputy District Attorney Maranda for negligence by a public employee pursuant to California Government Code §§ 815.2(a) and 820(a) and alleges:

33. Defendant David Maranda failed to use reasonable care to prevent harm to plaintiff's [sic] by misrepresenting to the court that a subpoena had been served on plaintiff. Plaintiff was harmed and defendant David Maranda's negligence was a substantial factor in causing plaintiff's harm.

34. David Maranda was within the scope of his employment. Defendant County of Merced [sic] is liable for David Maranda's negligence.

The Fourth and Fifth Causes of Action are against "All Defendants" for intentional infliction of emotional distress and negligent infliction of emotional distress, respectively.

Defendants Merced County District Attorney's Office and

4

David Moranda move to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

A. <u>Governing Standards</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic, id.* at 1964-1965. Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds,*

*Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

   B.   <u>Absolute Prosecutorial Immunity</u>.

   Defendant Moranda moves to dismiss the Complaint against him to the extent it alleges liability under Section 1983 on the ground of absolute prosecutorial immunity from liability for damages.

   "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The official seeking

absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Id.* at 269. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-487 (1991).

Prosecutorial immunity protects eligible government officials who perform functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "Such immunity applies even if it leaves the genuinely wronged [plaintiff] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986). Acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to the protection of absolute immunity. *Kalina v. Fletcher*, 522 U.S. 1128, 126 (1997). "The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir.1987).

In *Burns v. Reed, supra*, the Supreme Court held that absolute immunity applied to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing. 500 U.S. at 492. The Supreme Court reasoned that "appearing before a judge and presenting evidence in support of a motion for a search warrant clearly involve the prosecutor's role as an advocate for the

State, rather than his role as an administrator or investigative officer." *Id.* at 491. The prosecutor was thus immune from liability based on the plaintiff's allegations that he had elicited false testimony during the hearing. *Id.* at 482. The Supreme Court refused to grant absolute immunity for the prosecutor's act of providing legal advice to the police. *Id.* at 496. The Supreme Court rejected the argument that giving legal advice is related to a prosecutor's role in screening cases for prosecution:

> That argument ... proves too much. Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, as in *Imbler*, we inquire whether the prosecutor's actions are *closely associated with the judicial process*.

In *Buckley v. Fitzsimmons*, *supra*, the Supreme Court denied absolute immunity to prosecutors who were sued for fabricating evidence "during the early stages of the investigation" where "police officers and assistant prosecutors were performing essentially the same investigative function." 509 U.S. at 262-263. The Supreme Court reasoned:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither

> appropriate nor justifiable that, for the
> same act, immunity should protect the one but
> not the other.'

*Id.* at 273.  The Supreme Court ruled that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  *Id.* at 274.

In *Kalina v. Fletcher, supra*, the Supreme Court denied absolute prosecutorial immunity to a prosecutor who filed the equivalent of an affidavit in support of a motion for an arrest warrant.  The prosecutor had filed an information charging burglary, a motion for an arrest warrant, and a "Certification for Determination of Probable Cause."  The Supreme Court reasoned:

> [P]etitioner's activities in connection with
> the preparation and filing of two of the
> three charging documents - the information
> and the motion for an arrest warrant - are
> protected by absolute immunity.  Indeed,
> except for her act in personally attesting to
> the truth of the averments in the
> certification, it seems equally clear that
> the preparation and filing of the third
> document in the package was part of the
> advocate's function as well.

*Id.* at 129.  However, in personally attesting, "petitioner performed an act that any competent witness might have performed,' and was thus not entitled to absolute immunity.  *Id.* at 129-130.  "Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness."  *Id.* at 131.

Although the Complaint is short on factual detail, it

appears that Plaintiff's complaint is that a Superior Court judge issued an arrest warrant because of Plaintiff's failure to appear in response to a trial subpoena, that Defendant Moranda allegedly misrepresented to the judge that a trial subpoena for Plaintiff's appearance had been issued and that Plaintiff was avoiding service of the subpoena in order to obtain the arrest warrant.

Defendant Moranda is entitled to absolute prosecutorial immunity from liability for damages under Section 1983. Compelling the presence of witnesses at a trial is "intimately associated with the judicial phase of the criminal process."

Defendant Moranda is entitled to prosecutorial immunity under California law. The immunity provided by California Government Code § 821.6 applies to a public prosecutor.[2] *Miller v. Filter*, 150 Cal.App.4th 652, 666 (2007); *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209-1210 (1994). *See also Falls v. Superior Court*, 42 Cal.App.4th 1031, 1045 (1996):

> The actions of petitioners consist of subpoenaing a witness for a judicial hearing and interviewing that witness prior to the hearing. Such actions are indivisible from and 'intimately associated with' the act of initiating a criminal prosecution - for which a prosecutor has always enjoyed immunity ....
>
> ...
>
> We hold that a prosecutor acts within his official capacity when he subpoenas a witness

---

[2] California Government Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

> or prepares for a postcharging hearing, such
> as a preliminary hearing, by interviewing a
> witness and encouraging the witness to
> testify.

Defendant Moranda's motion to dismiss the Complaint on the ground of absolute prosecutorial immunity is GRANTED.

C. **Merced County District Attorney's Office Not a Proper Defendant**.

Defendants argue and Plaintiff concedes that the Merced County District Attorney's Office is not a proper defendant in Plaintiff's Section 1983 cause of action. Plaintiff concedes that the proper defendant is the County of Merced and requests leave to amend to name the County of Merced and Merced County District Attorney Larry Morse III as the proper defendants.

Defendants argue that leave to amend to name the County of Merced and the Merced County District Attorney as the proper defendants should be denied. Defendants note that the County can only be held liable under Section 1983 if Plaintiff pleads and proves municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

Local government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Monell v. Dep't of Soc. Servs.*, *supra*, 436 U.S. at 690-91. Alternatively, if no formal

policy exists, plaintiffs may point to "customs and usages" of the local government entity.  *Id*.  A local government entity cannot be held liable simply because it <u>employs</u> someone who has acted unlawfully.  *Id*. at 694.  *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").

To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three-part test:

> (1)    The local government official(s) must have intentionally violated the plaintiff's constitutional rights;
>
> (2)    The violation must be a part of policy or custom and may not be an isolated incident; and
>
> (3)    There must be a link between the specific policy or custom to the plaintiff's injury.

*Id.* at 690-92.  There are a number of ways to prove a policy or custom of a municipality.  A plaintiff may show (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that

authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  Id.

A municipality may still be liable under *Monell* for a single incident where: (1) the person causing the violation has "final policymaking authority;" (2) the "final policymaker" "ratified" a subordinate's actions; or (3) the "final policymaker" acted with deliberate indifference to a subordinate's constitutional violations.  *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999).

Here, Plaintiff alleges that Deputy District Attorney Moranda had "final, authorized policymaking authority and implemented and created and approved the decision and conduct in obtaining and executing the fraudulent warrant."

To hold a local government liable for an official's conduct, a plaintiff must first establish that the official 1) had final policymaking authority "concerning the action alleged to have caused the particular constitutional or statutory violation at issue" and 2) was the policymaker for the local governing body for the purposes of the particular act.  *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785 (1997).  State law defines the official's "actual function...in a particular area" for section 1983 purposes and this function must be evaluated to determine whether he or she acts for the state or county.  *Id*. at 786.  In

*Pitts v. County of Kern*, 17 Cal.4th 340 (1998), the California Supreme Court concluded that a district attorney acts on behalf of the state rather than the county in preparing to prosecute crimes and in training and developing policies for prosecutorial staff. *Pitts* involved section 1983 claims brought against Kern County, its district attorney and employees by persons convicted of child molestation whose convictions were reversed on appeal. The Ninth Circuit has also concluded that "under California law a county district attorney acts as a state official when deciding whether to prosecute an individual." *Weiner v. San Diego County*, 210 F.3d 1025, 1030 (9th Cir. 2000). In *Bishop Paiute Tribe v. County of Inyo*, 291 F.3d 549 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 701 (2003), the Ninth Circuit held the district attorney was not preparing to prosecute or prosecuting criminal violations when the district attorney obtained and executed a search warrant in order to investigate allegations of welfare fraud. 291 F.3d at 564-565. In so holding, the Ninth Circuit analogized to the cases discussing entitlement to absolute prosecutorial immunity, relying on the holdings in *Fletcher v. Kalina*, that a prosecutor is not entitled to absolute immunity for conduct in preparing a sworn declaration in support of an arrest warrant, and in *Buckley v. Fitzsimmons*, that a prosecutor is not entitled to absolute prosecutorial immunity when he allegedly fabricated evidence during the investigation by retaining a dubious expert witness. The Ninth Circuit held in pertinent part:

14

> Relying on Fletcher and Buckley, and
> recognizing the significant factual
> distinctions between this case and Pitts, we
> find that the District Attorney was engaging
> in investigatory, and not prosecutorial, acts
> when he obtained and executed a search
> warrant over the Tribe.  This conclusions
> compels our finding that the District
> Attorney acted as a county officer when
> obtaining and executing a search warrant
> against the Tribe.

291 F.3d at 565.

Here, even if it is assumed for purposes of the motion to dismiss that Defendant Moranda is the final policymaker for the Merced County District Attorney's Office in deciding to seek an arrest warrant for Plaintiff because of his failure to appear as a trial witness, to the extent that Plaintiff seeks leave to amend to impose Section 1983 liability on the County of Merced for the decision of Defendant Moranda, Plaintiff cannot state a claim for relief against the County.  The same conclusion must be reached with regard to Plaintiff's request to amend to name Merced County District Attorney Larry Morse III as a proper defendant.  *McMillan, Pitts,* and *Bishop Paiute Tribe* establish that District Attorney Morse III acts on behalf of the State with regard to the allegations of Plaintiff's Complaint.

As to the supplemental state law causes of action, because Defendant Moranda is immune from liability pursuant to California Government Code § 821.6, the County and the District Attorney are also immune.  California Government Code § Section 815.2(b) provides:

> (b) Except as otherwise provided by statute,

> a public entity is not liable for an injury
> resulting from an act or omission of an
> employee of the public entity where the
> employee is immune from liability.

Because Defendant Moranda is immune from liability, "qualified immunity applies to the public entity as well."   *See Poppell v. City of San Diego*, 149 F.3d 951, 970 (9th Cir.1998)("The City of San Diego cannot be held liable for such acts [of negligence] where its employees are immune from liability.").

Plaintiff cites *Russo v. County of El Dorado*, 2008 WL 110959 (E.D.Cal.2008).  In *Russo*, the Plaintiffs alleged that  child protective services employees instituted proceedings in state court to make a minor child a dependent of the court, that the petition contained lies, misrepresentations, and omissions of material fact, that, during the dependency proceedings the defendants made additional fabrications and misrepresentations to the court, failed to present exculpatory evidence, and obtained evidence obtained by duress.  Defendants moved to dismiss the state law claims against them under California Government Code § 821.6, which immunizes them from liability for instituting a judicial proceeding.  Judge Burrell denied the motion to dismiss:

> Section 821.6 provides a public employee
> immunity from liability for an 'injury caused
> by his instituting or prosecuting any
> judicial or administrative proceeding within
> the scope of his employment, even if he acts
> maliciously and without probable cause.' ...
> However, a public employee has no section
> 821.6 immunity if he acted with malice in
> committing perjury, fabricating evidence,
> failing to disclose exculpatory evidence, or
> obtained. *Id.* § 820.21; *see Masoud v. County
> of San Joaquin*, 2006 WL 3251797, at *8

16

(E.D.Cal. Nov. 8, 2006)(finding that upon a motion to dismiss, the plaintiffs' general allegation that '[d]efendants are guilty of oppression, fraud, and/or malice' was 'sufficient to invoke the [section 820.21] exception to the general grant of governmental immunity ...').  Since Plaintiffs have alleged that each Defendant acted with malice in 'withholding exculpatory or contradictory information' and in 'fabricating ... the statements of A.R. and the circumstances surrounding the obtaining of the statements of A.R. and others in an effort to mislead the court,' the motion seeking dismissal of Plaintiffs' state law claims under section 821.6 is denied.

Plaintiff's reliance on *Russo* is misplaced.  Judge Burrell relied on California Government Code § 820.21:

(a) Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

(1) Perjury.

(2) Fabrication of evidence.

(3) Failure to disclose known exculpatory evidence.

(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

(b) As used in this section, 'malice' means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious

17

disregard of the rights or safety of others. This exception to immunity under the Government Code has no application to this action.

Although it appears that amendment to name the County and the District Attorney as defendants in this action may be futile, leave to amend is GRANTED. Plaintiff is subject to the strictures of Rule 11, Federal Rules of Civil Procedure, requiring a good faith basis in fact and in law to proceed.

## CONCLUSION

For the reasons stated:

1. Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND;

2. Plaintiff shall file a First Amended Complaint in accordance with the rulings in the Memorandum Decision within 20 days from the filing date of this Memorandum Decision and Order.

IT IS SO ORDERED.

Dated: __March 25, 2009__ _____/s/ Oliver W. Wanger_____
UNITED STATES DISTRICT JUDGE