1

2

3

4

5       IN THE UNITED STATES DISTRICT COURT FOR THE

6              EASTERN DISTRICT OF CALIFORNIA

7

8   MAXIMILIAN EDDIE VARGAS,      )        No. CV-F-08-1707 OWW/GSA
                                  )
9                                 )        MEMORANDUM DECISION AND
                                  )        ORDER DENYING DEFENDANTS'
10              Plaintiff,        )        MOTION TO DISMISS FIRST
                                  )        AMENDED COMPLAINT (Doc. 17)
11         vs.                    )
                                  )
12                                )
    DEPUTY DISTRICT ATTORNEY      )
13  DAVID MARANDA, et al.,        )
                                  )
14                                )
                Defendants.       )
15                                )
    _____)
16

17        Plaintiff Maximilian Eddie Vargas filed a First Amended

18   Complaint (FAC) pursuant to the Memorandum Decision and Order

     filed on March 26, 2009 (hereafter the March 26 Memorandum
19
     Decision) granting Defendants' motion to dismiss the Complaint
20
     with leave to amend.
21
          The FAC names as Defendants Deputy District Attorney
22
     Moranda, in his official and individual capacities, and Does 1-
23
     50.[1]   The factual allegations of the FAC are:
24   _____

25        [1]The FAC spells Moranda's name as "Maranda" and "Miranda" in
     the FAC.  However, as stated in the March 26 Memorandum Decision,
26   Defendant's name is spelled "Moranda."   In addition, in the

                                1

5. Twenty years ago Daniel Robert Thompson, who was at that time Vargas' friend, was accused of a homicide. Vargas was interrogated by Merced law enforcement in connection with  the investigation.

6. More recently the case against Thompson was reopened by the Merced District Attorney's Office and Merced County District Attorney's investigator Anna Hazell called Vargas two or three times on the telephone. Each time Anna Hazell called, Vargas answered and spoke to her, or returned her call.

7. After Anna Hazell called Vargas, Merced County Deputy District Attorney David Maranda also called Vargas at least twice. Again, each time Maranda called, Vargas either answered and spoke to him or returned his call and spoke to him.

8. All conversations between Vargas and County of Merced District Attorney personnel pertained to Vargas meeting with Maranda to discuss what his testimony would be if the District Attorney called him to testify at Thompson's trial. No person from the District Attorney's office or from Merced County Sheriff's office told Vargas there was a trial pending, or going on, or told Vargas that his testimony at a trial was required.

9. On Friday, January 25, 2008 at approximately 5:41 p.m.. Vargas was arrested pursuant to a bench warrant by County of Merced deputy Sheriff Hale 5156. The bench warrant was issued by Judge John Kirihara.

10. At the time Vargas was arrested a call was made to Judge Kirihara, who verbally increased the bail set for Vargas to $75,000.

11. To obtain the bench warrant Maranda misrepresented to the court: (a) that a subpoena compelling Vargas appearance trial had been issued; (d) that service of the subpoena had been attempted, and, (c) Vargas

Jurisdictional allegations of the FAC, Plaintiff is described as "Maximilian Eddie Ferguson."

2

had avoided service. None of these three representations were true.  Maranda had no reasonable belief that any of the three misrepresentations were true:

(a). The subpoena had not been issued at the time Maranda misrepresented it had been.  The subpoena to compel Vargas to appear at the trial was not issued until January 25, 2008; the same date that Vargas was arrested on the bench warrant. (Exhibit A. attached hereto and made a part of this complaint).

(b). There had been no previous attempts to serve the subpoena on Vargas. The subpoena was issued on the same day Vargas was arrested. (Exhibit A). As stated in the Merced County Sheriff's Department Felony Arrest Warrant Report, the only document the Sheriff received to serve on Vargas was the arrest warrant; not the subpoena. The Felony Arrest Warrant Report makes no mention whatsoever of the subpoena, or any knowledge thereof. (Exhibit B attached hereto and made a part of this complaint).

(c). Vargas did not, at any time, avoid service of the subpoena. If asked, when he talked to the district attorney investigator and Maranda on several different occasions, he would have gone to the district attorney's office to accept service of the subpoena. No attempt to serve the subpoena on Vargas was made until he was (successfully) served while he was in jail after being arrested.

12. Vargas was booked into Merced County Jail. While Vargas was in jail, he was served with a subpoena to appear Monday morning, January 28, 2008 to testify at Thompson's trial.

3

13. Vargas bailed out of the Merced County
Jail late Friday night or early Saturday
morning, January 25 or 26, 2008.

14. Vargas appeared Monday morning, January
28, 2008 and testified at Thompson's trial.

15. Vargas was harmed financially in that he
lost the $7,500 he posted for bail after
being arrested on Friday, January 25, 2008.
Vargas also suffered general, pain and
suffering, emotional distress, and special
damages as a result of the arrest.

Attached as Exhibit B to the FAC is a copy of the Merced County

Sheriff's Department's Felony Warrant Arrest Report, which

states:

On January 25, 2008, I received a court order
in regards to Superior Court Case MF43481,
Defendant Daniel Robert Thompson.  Presiding
Superior Court Judge John Kirihara signed the
court order, issuing a bench warrant for a
witness in the above case, Maximilian Eddie
Vargas ....

...

Vargas was transported to the Merced County
Sheriff's Department, where he was booked on
the court order.  When Vargas was taken into
custody a telephone call was made to Judge
Kirihara.  Judge Kirihara verbally increased
the bail of Vargas' bench warrant to
$75,000.00.

Attached as Exhibit A to the FAC is a copy of a Merced County

Superior Court subpoena in the *Thompson* case dated January 25,

2008, to Plaintiff to appear on January 28, 2008 to testify in

the *Thompson* case.


The March 26 Memorandum Decision dismissed the Complaint

against Defendant Moranda on the ground of absolute prosecutorial

immunity:

> "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Id.* at 269. "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-487 (1991).

> Prosecutorial immunity protects eligible government officials who perform functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "Such immunity applies even if it leaves the genuinely wronged [plaintiff] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir. 1986). Acts undertaken by a prosecutor "in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State," are entitled to the protection of absolute immunity. *Kalina v. Fletcher*, 522 U.S. 1128, 126 (1997). "The intent of the prosecutor when performing prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d 1310, 1315 (9th Cir.1987).

> In *Burns v. Reed, supra,* the Supreme Court held that absolute immunity applied to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing. 500 U.S. at 492. The Supreme Court reasoned that "appearing before a judge and presenting evidence in support of a motion for a search warrant clearly involve the prosecutor's role as an advocate for the State, rather than his role as an administrator or investigative officer." *Id.* at 491. The prosecutor was thus immune from liability based on the plaintiff's allegations that he had elicited

5

false testimony during the hearing.  *Id.* at
482.  The Supreme Court refused to grant
absolute immunity for the prosecutor's act of
providing legal advice to the police.  *Id.* at
496.  The Supreme Court rejected the argument
that giving legal advice is related to a
prosecutor's role in screening cases for
prosecution:

> That argument ... proves too much.
> Almost any action by a prosecutor,
> including his or her direct
> participation in purely
> investigative activity, could be
> said to be in some way related to
> the ultimate decision whether to
> prosecute, but we have never
> indicated that absolute immunity is
> that expansive.  Rather, as in
> *Imbler*, we inquire whether the
> prosecutor's actions are *closely*
> *associated with the judicial*
> *process*.

In *Buckley v. Fitzsimmons*, *supra*, the Supreme
Court denied absolute immunity to prosecutors
who were sued for fabricating evidence
"during the early stages of the
investigation" where "police officers and
assistant prosecutors were performing
essentially the same investigative function."
509 U.S. at 262-263.  The Supreme Court
reasoned:

> There is a difference between the
> advocate's role in evaluating
> evidence and interviewing witnesses
> as he prepares for trial, on the
> one hand, and the detective's role
> in searching for the clues and
> corroboration that might give him
> probable cause to recommend that a
> suspect be arrested, on the other
> hand.  When a prosecutor performs
> the investigative functions
> normally performed by a detective
> or police officer, it is 'neither
> appropriate nor justifiable that,
> for the same act, immunity should
> protect the one but not the other.'

6

*Id.* at 273.  The Supreme Court ruled that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274.

In *Kalina v. Fletcher, supra*, the Supreme Court denied absolute prosecutorial immunity to a prosecutor who filed the equivalent of an affidavit in support of a motion for an arrest warrant.  The prosecutor had filed an information charging burglary, a motion for an arrest warrant, and a "Certification for Determination of Probable Cause."  The Supreme Court reasoned:

> [P]etitioner's activities in connection with the preparation and filing of two of the three charging documents – the information and the motion for an arrest warrant – are protected by absolute immunity. Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well.

*Id.* at 129.  However, in personally attesting, "petitioner performed an act that any competent witness might have performed,' and was thus not entitled to absolute immunity.  *Id.* at 129-130.  "Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness."  *Id.* at 131.

Although the Complaint is short on factual detail, it appears that Plaintiff's complaint is that a Superior Court judge issued an arrest warrant because of Plaintiff's failure to appear in response to a trial subpoena, that Defendant Moranda allegedly misrepresented to the judge that a trial subpoena for Plaintiff's appearance had been issued and that Plaintiff was avoiding

7

1          service of the subpoena in order to obtain
           the arrest warrant.
2
           Defendant Moranda is entitled to absolute
3          prosecutorial immunity from liability for
           damages under Section 1983.  Compelling the
4          presence of witnesses at a trial is
           "intimately associated with the judicial
5          phase of the criminal process."

6          Defendant Moranda is entitled to
           prosecutorial immunity under California law.
7          The immunity provided by California
           Government Code § 821.6 applies to a public
8          prosecutor.  *Miller v. Filter*, 150
           Cal.App.4th 652, 666 (2007); *Amylou R. v.*
9          *County of Riverside*, 28 Cal.App.4th 1205,
           1209-1210 (1994).  *See also Falls v. Superior*
10         *Court*, 42 Cal.App.4th 1031, 1045 (1996):

11             The actions of petitioners consist
               of subpoenaing a witness for a
12             judicial hearing and interviewing
               that witness prior to the hearing.
13             Such actions are indivisible from
               and 'intimately associated with'
14             the act of initiating a criminal
               prosecution – for which a
15             prosecutor has always enjoyed
               immunity ....
16
               ...
17
               We hold that a prosecutor acts
18             within his official capacity when
               he subpoenas a witness or prepares
19             for a postcharging hearing, such as
               a preliminary hearing, by
20             interviewing a witness and
               encouraging the witness to testify.
21
           Defendant Moranda's motion to dismiss the
22         Complaint on the ground of absolute
           prosecutorial immunity is GRANTED.
23
     The March 26 Memorandum Decision then discussed whether Plaintiff
24
     had or could state a claim for relief against the County of
25
     Merced and the Merced County District Attorney and ruled:
26

1

                  Although it appears that amendment to name
the County and the District Attorney as

2

defendants in this action may be futile,
leave to amend is GRANTED.  Plaintiff is

3

subject to the strictures of Rule 11, Federal
Rules of Civil Procedure, requiring a good

4

faith basis in fact and in law to proceed.

5

The March 26 Memorandum Decision concluded:

6

                  For the reasons stated:

7

                  1.  Defendants' motion to dismiss is GRANTED
WITH LEAVE TO AMEND;

8

9

                  2.  Plaintiff shall file a First Amended
Complaint in accordance with the rulings in
the Memorandum Decision within 20 days from

10

the filing date of this Memorandum Decision
and Order.

11

12

     Defendants move to dismiss the FAC on the ground that the

13

March 26 Memorandum Decision dismissed the action against

14

Defendant Moranda and suggest that the Court should *sua sponte*

15

impose sanctions against Plaintiff under Rule 11, noting the

16

admonition in the March 26 Memorandum Decision concerning

17

amendment to bring in Merced County and the Merced County

18

District Attorney.

19

     Plaintiff responds that, because the March 26 Memorandum

20

Decision dismissed the Complaint with leave to amend, the Court

21

granted leave to amend to state a claim against Defendant

22

Moranda, notwithstanding the ruling that the action was dismissed

23

against Moranda based on absolute prosecutorial immunity.

24

     The March 26 Memorandum Decision did not clearly hold that

25

Plaintiff could not amend to allege a claim for relief against

26

Defendant Moranda because of absolute prosecutorial immunity.

1  Plaintiff cannot be and will not be sanctioned under Rule 11.

2       Plaintiff, citing *Kalina v. Fletcher*, 522 U.S. 128 (1997),

3  asserts that the Court's conclusion in the March 26 Memorandum

4  Decision is incorrect because "[w]hat happened in *Kalina v.*

5  *Fletcher* is what happened here."

6       The validity of Plaintiff's position is undermined by the

7  absence of any allegation that Defendant Moranda attested or

8  swore under penalty of perjury to Judge Kirihara facts underlying

9  the issuance of the bench warrant.  *See, e.g., Cruz v. Kauai*

10 *County*, 279 F.3d 1064, 1067 (9th Cir.), *cert. denied*, 537 U.S.

11 1053 (2002):

12          Prosecutor Soong is not entitled to absolute
            prosecutorial immunity for his conduct in
13          swearing to facts in support of the bail
            revocation motion.  Soong lost that
14          protection because he stepped outside of his
            prosecutorial role, and into the role as a
15          witness, when he personally attested to the
            truth of the facts in the affidavit.  *See*
16          *Kalina*, 522 U.S. at 130.

17 Further, there is conflicting out-of-circuit authority affording

18 absolute prosecutorial immunity to a prosecutor securing a

19 material witness warrant.  *See Betts v. Richard*, 726 F.2d 79, 81

20 (2nd Cir.1984); *Daniels v. Kieser*, 586 F.2d 64, 68 (7th Cir.1978),

21 *cert. denied*, 441 U.S. 931 (1979); *but see Odd v. Malone*, 538

22 F.3d 202, 212-213 (3rd Cir.2008)(no absolute prosecutorial

23 immunity for material witness warrant when prosecutor failed to

24 advise trial judge, as ordered, that criminal case at which

25 material witness was to testify had been delayed for a period of

26 four months, thereby casting "serious doubt" as to the

prosecutor's claim that her action during the period of delay remained "intimately associated with the judicial phase" of the litigation).

Although the FAC does not specifically allege that Defendant Moranda filed any affidavit or statement under penalty of perjury to obtain the bench warrant for Plaintiff's failure to appear and the act of obtaining a bench warrant to compel the appearance of a trial witness appears to be intimately associated with the judicial phase of the criminal process, the law in this area is in conflict.  Application of absolute prosecutorial immunity in this case cannot be determined until the underlying facts are fully developed and resolved by subsequent dispositive proceedings, i.e., by summary judgment or trial.

For the reasons stated:

1.  Defendant's motion to dismiss the First Amended Complaint is DENIED;

2.  Defendant's request for Rule 11 sanctions is DENIED.

IT IS SO ORDERED.

Dated:   __June 23, 2009__          _____/s/ Oliver W. Wanger_____
                                    UNITED STATES DISTRICT JUDGE

11